12 So.2d 79

**DRAKE v. KIZZIAH.**

6 Div. 119.

Supreme Court of Alabama.

Feb. 11, 1943.

———◆———

Foster, Rice, Madison & Rosenfeld, of Tuscaloosa, for appellant.

F. F. Windham, of Tuscaloosa, for appellee.

THOMAS, Justice.

The suit was for punitive damages declared in several counts.

The assignments of error challenge the action of the court in overruling defendant's motion for a new trial.

The facts may be stated in short as follows: That Miss Margarete Shirley was Secretary and Treasurer of the Senior Class, and testified that Miss Reshie Kizziah, appellee, was also a member of that senior class; that said class adopted the rule and appointed a committee to indicate its will and ruling to the principal as to those entitled to wear a class ring, and she was on the committee which went to the principal, Mr. Drake, appellant, about getting him to order the rings; that they instructed him on what terms the rings were to be delivered to the different students of the class, as per the rule; that the rings were to be delivered to those who had paid their incidental fees; and that appellant was instructed by the committee from the class to that effect.

Mrs. Elizabeth Eatwood testified to like effect; that she was the keeper of the records of the senior class, touching the fact as to who paid their incidental fees and who did not; that she knew about the rule pertaining to their incidental fees and who would be allowed to wear class rings; that the senior class met in the principal's office and drew up the plans and the rule that the students should take care of their school or incidental fees before they were allowed the privilege to wear the senior class rings, to be purchased and delivered by the principal.

The appellant, W. W. Drake, testified that he was only acting as agent in order-

ing the rings for said senior class and acted in accordance with their instructions; in so doing, he did not deliver the ring to Miss Kizziah for the reason that she had failed to pay her incidental fees, in accordance with the rule adopted by her class.

We think it should be stated that the appellee testified as follows: "* * * Not all of the students in that Class got one of these rings, maybe three or four didn't. They didn't buy rings. The rule about the rings was made in the class. Miss Shirley was secretary of the Senior Class and I paid my money to her,—I don't know whether any instructions were given to her about it when it was turned over to her or not, and I don't know whether the class adopted any instructions about a ring or not and I don't know about that. Miss Shirley was supposed to give the money to Mr. Drake and he was supposed to order the ring and the ones that bought them and paid for them were to be entitled to wear the rings and there were no rules at all as to who would be entitled to wear them, but they were supposed to pay their incidental fees in order to have a right to wear them."

On re-direct examination the witness testified as follows: "* * * After I had talked to him about it and he had refused to give the ring to me, I talked to my father about it and that was the occasion of me taking the letter from my father who was sick at that time. I don't know of a single other student in that school that had graduated and paid for the ring that wasn't allowed to wear it, and had heard of no other pupil being refused to get a ring who had paid for the ring. Mr. Drake told me that I had to pay my incidental fees before I could wear the ring, but the homeroom teachers made the announcement that he gave,—they made the announcement. That had never been the rule before until that year and I had never heard of it before and I had been there five years. I did not participate in any agreement among the students that that would be the rule and the only place I heard it from was through the heads of the school."

The witness further testified: "Yes, I said Mr. Drake told me that he was surprised that I had ordered a ring when I went in to see him,—not because I hadn't qualified to wear it, but because I hadn't paid my fees. He didn't tell me that day that he would get the ring out of the Post Office if I would come back to see him and

see if he couldn't work out something about it,—I don't remember him telling me that, No, sir."

The mere statement of this evidence demonstrates to a certainty that any verdict for plaintiff other than one for $7.65 (which amount was tendered to the court) fails to do justice in the premises.

There was evidence that defendant was acting only as agent for the senior class; that they instructed him (defendant) to deliver rings to those who had paid their school fees and not to those in arrears in the payment of such school fees; that plaintiff had not paid these fees. If the jury was reasonably satisfied from the evidence of these facts, then their verdict could not properly have been rendered for a larger sum than that paid by the plaintiff, which sum was tendered into court.

It results that the judgment of the circuit court should be and the same is hereby reversed and the cause is remanded.

Reversed and remanded.

GARDNER, C. J., and LIVINGSTON, and LAWSON, JJ., concur.